UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DEVIN MCKAY,

               Plaintiff,

v.

K. DAVIS et al.,

               Defendants.

_____/

Case No. 2:24-cv-156

Honorable Robert J. Jonker

## **OPINION**

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Davis, Smith, and King. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendant Kubont: (i) official capacity claims, (ii) First Amendment retaliation claims, and (iii) Fourteenth Amendment procedural and substantive due process claims. Plaintiff's Eighth Amendment claim against Defendant Kubont in her individual capacity will remain in the case.

**Discussion**

I.     **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following KCF staff in their individual and official capacities: Correctional Officer K. Davis, Sergeant B. Smith, Prison Counselor Unknown King, and Registered Nurse Trish L. Kubont. (Compl., ECF No. 1, PageID.1, 2.)

In Plaintiff's complaint, he alleges that on November 16, 2023, Defendant Davis woke Plaintiff up "and informed him that he had to move" to a top bunk. (*Id.*, PageID.7.) Plaintiff told Defendant Davis "that because of his seizures, he had a bottom bunk detail," and Plaintiff provided Defendant Davis "with a copy of his bottom bunk detail," which was dated November 22, 2019.[1] (*Id.*) Defendant King then called non-party Health Unit Manager Ball, "who told [Defendant King] that Plaintiff did not have an order for a bottom bunk detail." (*Id.*, PageID.8.) After this telephone conversation, Defendant Davis ordered Plaintiff "to move to a top bunk." (*Id.*) "Plaintiff was informed that [Defendant] Kubont pulled his bottom bunk detail, without an order from a Nurse Practitioner and/or Doctor." (*Id.*) In response to Defendant Davis's order, Plaintiff advised "that he could not move to the top bunk because he has Pet[it] Mal seizures and it would be a danger to his health." (*Id.*) Plaintiff also told Defendant Davis "that if they forced him to move that he would write a grievance." (*Id.*)

---

[1] Plaintiff attached a copy of a "Special Accommodations Orders" document (i.e., Plaintiff's bottom bunk detail), which was "generated" by Defendant Kubont on November 22, 2019, to his complaint. (ECF No. 1-1, PageID.16.) The document indicates that a non-party medical provider ordered that Plaintiff receive a bottom bunk starting on August 28, 2014, and the document does not list a "Stop Date" for this accommodation. (*See id.*)

2

Later that same day, Defendant King "instructed [Defendant] Davis" to write Plaintiff a class II misconduct ticket for disobeying a direct order. (*Id.*) Defendant Smith reviewed Plaintiff on the misconduct charge, and Plaintiff gave Defendant Smith a copy of Plaintiff's bottom bunk detail. (*Id.*) Defendant Smith "then explained that if Plaintiff . . . kept refusing to move to a top bunk he would elevate" the disobeying a direct order misconduct charge to a class I misconduct charge "for impeding facility operations." (*Id.*) "Plaintiff again refused to move to the top bunk for fear of his health." (*Id.*) Plaintiff was then placed on non-bond status, "which is the equivalent to being in segregation." (*Id.*)

Subsequently, on November 21, 2023, Plaintiff had an appointment with an unnamed, non-party medical provider, and at that time, Plaintiff was "issued a bottom bunk detail for his seizure disorder." (*Id.*) "Plaintiff believes that this was done because of the grievance he wrote and the misconduct he was issued." (*Id.*) "It was stated that Plaintiff['s] . . . bottom bunk detail did not carry forward from the old medical record when it was updated in 2020, even though Plaintiff had a hard copy of the detail." (*Id.*)

In total, Plaintiff was on non-bond status for eleven days. (*Id.*) On November 27, 2023, Plaintiff was found not guilty of the misconduct charge "because he provided a valid bottom bunk detail, with no expiration date," which Plaintiff claims shows "there is no record that the detail was pulled." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his right to be free from retaliation under the First Amendment, Eighth Amendment rights, and procedural and substantive due process rights under the Fourteenth Amendment. (*Id.*, PageID.9–12.) Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages. (*Id.*, PageID.12–13.)

## II.        Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

4

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Official Capacity Claims

Plaintiff sues Defendants in their individual and official capacities. (Compl., ECF No. 1, PageID.2.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). In this case, Plaintiff indicates that all of the Defendants are employed by the MDOC. (*See* Compl., ECF No. 1, PageID.6.) However, the states and their departments are immune from suit in the federal courts under the Eleventh Amendment, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison*, 722 F.3d at 771.

Here, Plaintiff seeks monetary damages, as well as injunctive and declaratory relief. (Compl., ECF No. 1, PageID.12–13.) However, an official capacity defendant is absolutely

immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). Therefore, Plaintiff may not seek monetary damages against Defendants in their official capacities.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief). A court should assume that, absent an official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally. *Lyons*, 461 U.S. at 102.

In the present action, Plaintiff does not allege the existence of an official policy or practice, or suggest that the activities alleged in the complaint are likely to occur to him again. Instead, Plaintiff's allegations relate solely to past harm, not future risk of harm. Therefore, Plaintiff does not seek relief properly characterized as prospective. *See Ladd*, 971 F.3d at 581.

Accordingly, for these reasons, Plaintiff's official capacity claims against Defendants will be dismissed.[2]

### B.   Eighth Amendment Claims

Plaintiff alleges that Defendants violated his Eighth Amendment rights when Plaintiff's bottom bunk detail was discontinued and he was ordered to move to a top bunk. (*See* Compl., ECF No. 1, PageID.10–12.)

The Eighth Amendment protects against the denial of the "minimal civilized measure of life's necessities," *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998), and "[t]he Supreme Court has long recognized that the government has a constitutional obligation to provide medical care to those whom it detains." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020) (citing *Estelle v. Gamble*, 429 U.S.

---

[2] If Defendant Kubont, a registered nurse, is employed by Wellpath or any other private medical provider that contracts with the state to provide medical care in state prisons, rather than the MDOC, Plaintiff also fails to state a claim against Kubont in her official capacity. An official capacity suit is treated as a suit against the entity itself, and Wellpath's liability, like a municipality's liability, "must also be premised on some policy [or custom] that caused a deprivation of [a prisoner's constitutional] rights." *See Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), has been extended to private corporations). Here, Plaintiff fails to allege the existence of a custom or policy of Wellpath, let alone that any policy or custom was the moving force behind his alleged constitutional injuries. Where a plaintiff fails to allege that a policy or custom existed, dismissal of the action, or claim, for failure to state a claim is appropriate. *Rayford v. City of Toledo*, No. 86-3260, 1987 WL 36283, at *1 (6th Cir. Feb. 2, 1987). Therefore, because Plaintiff fails to allege the existence of a policy or custom, if Defendant Kubont is employed by a private medical provider that contracts with the state to provide medical care in state prisons, Plaintiff would also fail to state a claim against Kubont in her official capacity.

97, 104 (1976); *Rhinehart v. Scutt*, 894 F.3d 721, 736–37 (6th Cir. 2018); *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). However, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).

In order for a prisoner to prevail on an Eighth Amendment claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that defendants acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### 1.    Defendants Davis, Smith, and King

Plaintiff alleges that on November 16, 2023, Defendant Davis "informed [Plaintiff] that he had to move" to a top bunk. (Compl., ECF No. 1, PageID.7.) Plaintiff told Defendant Davis "that because of his seizures he had a bottom bunk detail," and Plaintiff provided Defendant Davis "with a copy of his bottom bunk detail," which was dated November 22, 2019. (*Id.*) Defendant King then called non-party Health Unit Manager Ball, "who told [Defendant King] that Plaintiff did not have an order for a bottom bunk detail." (*Id.*, PageID.8.) After this telephone conversation, Defendant Davis ordered Plaintiff "to move to a top bunk." (*Id.*) Plaintiff advised that "he could not move to

8

the top bunk because he has Pet[it] Mal seizures and it would be a danger to his health." (*Id.*) Thereafter, Plaintiff was issued a class II misconduct ticket for disobeying a direct order. (*Id.*) Subsequently, Defendant Smith reviewed Plaintiff on the class II misconduct, and Smith elevated the charge to a class I misconduct charge "for impeding facility operations" when Plaintiff continued to refuse to move to a top bunk. (*Id.*)

As relevant to Plaintiff's Eighth Amendment claims against Defendants Davis, Smith, and King, administrative or custody officials, such as Defendants Davis, Smith, and King, who have no training or authority to supervise healthcare officials are entitled to rely on medical provider's judgment, as well as information provided by medical providers, and cannot be held liable for healthcare officials' inadequate care or incorrect information. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018); *Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012) ("[I]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004))); *see also Newberry v. Melton*, 726 F. App'x 290, 296–97 (6th Cir. 2018) (same); *Cuco v. Fed. Med. Ctr.-Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668, at *21–22 (E.D. Ky. June 9, 2006) (holding that prison administrative officials were not liable for overseeing and second-guessing care given by medical officials).

Here, after Plaintiff informed Defendants Davis and King that he had a bottom bunk detail, Defendant King called non-party Health Unit Manager Ball about the matter, and Ball, a medical provider, informed Defendant King that Plaintiff did not have an order for a bottom bunk detail. (Compl., ECF No. 1, PageID.8.) The facts alleged by Plaintiff in his complaint show that Defendants Davis, King, and Smith then relied on non-party Health Unit Manager Ball's medical information when they continued to order Plaintiff to move to a top bunk. (*See generally id.*) It is

clear that Plaintiff believes that Defendants Davis, Smith, and King should have relied on the printed copy of the bottom bunk order that Plaintiff had in his possession, which was dated November 22, 2019, rather than non-party Health Unit Manager Ball's statement; however, as discussed above, Defendants Davis, Smith, and King were entitled to rely on the medical information provided by non-party Health Unit Manager Ball and they cannot be held liable for relying on Ball's statement. *See, e.g.*, *Winkler*, 893 F.3d at 895; *Smith*, 505 F. App'x at 532.

Moreover, although Plaintiff alleges that after the telephone call with Ball, Plaintiff told Defendants King and Davis that "he could not move to the top bunk because he has Pet[it] Mal seizures and it would be a danger to his health," these nonmedical personnel were still entitled to rely on the information provided by non-party Health Unit Manager Ball. (Compl., ECF No. 1, PageID.8); *see, e.g.*, *See Winkler*, 893 F.3d at 895; *Smith*, 505 F. App'x at 532. At most, Plaintiff's allegations suggest that the custody Defendants acted negligently on November 16, 2023, when they did not take further steps to investigate Plaintiff's assertion regarding his medical condition; however, an Eighth Amendment violation requires a "state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Under these circumstances, the facts alleged by Plaintiff do not support an inference that Defendants Davis, Smith, and King, all of whom Plaintiff identifies as nonmedical personnel, acted with deliberate indifference.

Accordingly, for the reasons set forth above, Plaintiff fails to state an Eighth Amendment deliberate indifference claim against Defendants Davis, Smith, and King.

### 2.    Defendant Kubont

As to Defendant Kubont, Plaintiff states that he "was informed that [Defendant] Kubont pulled his bottom bunk detail, without an order from a Nurse Practitioner and/or Doctor." (Compl., ECF No. 1, PageID.8.) Plaintiff provides no additional supporting facts or explanation regarding Defendant Kubont's involvement in the matter. Nonetheless, at this stage of the proceedings, the

Court must take Plaintiff's factual allegations as true and in the light most favorable to him. Therefore, the Court will not dismiss Plaintiff's Eighth Amendment claim against Defendant Kubont at this early stage of the proceedings.

### C.    First Amendment Retaliation Claims

Plaintiff also claims that Defendants violated his First Amendment rights by retaliating against him. (*See id.*, PageID.9.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### 1.    Protected Conduct

With respect to the first element of a First Amendment retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016). Here, on November 16, 2023, after Plaintiff was ordered to move to a top bunk by Defendants Davis and King, Plaintiff told Defendant Davis "that if they forced him to move that he would write a grievance." (Compl., ECF No. 1, PageID.8.) Plaintiff also verbally grieved the matter to Defendants Davis, Smith, and King by telling them that he could not move to a top bunk due to his medical condition. (*See id.*) At this stage of the proceedings,

Plaintiff has alleged sufficient facts to suggest that he engaged in protected conduct for purposes of his First Amendment claim.

### 2. Adverse Action

With regard to the second element, the adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

The issuance of a misconduct charge can be considered an adverse action. *See Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007) (discussing that the issuance of a misconduct ticket can "constitute[] an adverse action"); *see also Hill*, 630 F3d at 474 (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse"); *Scott v. Churchill*, 377 F.3d 565, 572 (6th Cir. 2004) ("[T]he mere potential threat of disciplinary sanctions is sufficiently adverse action to support a claim of retaliation."). Here, Plaintiff alleges that he received a misconduct charge for disobeying a direct order and that this class II charge was subsequently elevated to a class I charge after Plaintiff continued to refuse to move to a top bunk. Plaintiff's receipt of a misconduct charge constitutes an adverse action.

### 3. Retaliatory Motive

Finally, to sufficiently state a First Amendment retaliation claim, Plaintiff must allege facts that support an inference that the adverse action was motivated by the protected conduct. As explained below, Plaintiff's allegations regarding this third element fall short.

Retaliation is easy to allege but it can seldom be shown by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be

sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). And, in prior cases, the Sixth Circuit has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Compare Muhammad*, 379 F.3d at 417–18 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), *and Briggs v. Westcomb*, No. 19-1837 (6th Cir. Mar. 10, 2020) (unpublished) (holding that allegations of temporal proximity were sufficient where the filing of retaliatory misconduct by correctional officers occurred six days after Plaintiff filed a grievance against a medical provider, but only one day after the provider learned of the grievance), *with Hill*, 630 F.3d at 476 (discussing that the Sixth Circuit has been reluctant to find that temporal proximity alone shows a retaliatory motive).

a.      **Defendants Davis, Smith, and King**

As to Defendants Davis, Smith, and King, there was temporal proximity between the relevant events because Plaintiff orally grieved the top bunk issue and Plaintiff told Defendant Davis that Plaintiff would be filing a written grievance about the matter *prior to* Plaintiff being issued a misconduct charge for refusing to move to a top bunk. (*See* Compl., ECF No. 1, PageID.8.) However, there was another event that *preceded* Plaintiff's protected conduct—non-party Health Unit Manager Ball had informed Defendant King that Plaintiff did not have a bottom bunk detail, meaning that, if ordered, Plaintiff would be required to move to a top bunk. (*See id.*)

Based on the facts alleged in Plaintiff's complaint, it is clear that Defendants Davis, King, and Smith relied on non-party Health Unit Manager Ball's statement when they continued to order Plaintiff to move to a top bunk, believing that Plaintiff was not entitled to a bottom bunk. (*See id.*) And, Defendants then issued Plaintiff a misconduct charge because he refused to obey their orders, *not* because Plaintiff had verbally grieved the issue and told Defendant Davis that Plaintiff would be filing a written grievance about the matter.

Moreover, although Plaintiff alleges in a conclusory manner that Defendants knew that the misconduct charge was false, the *facts* alleged in the complaint do not support this assertion. (*See id.*, PageID.10–12.) Plaintiff alleges that he showed Defendants Davis, Smith, and King a printed copy of the bottom bunk order that Plaintiff had in his possession, which was dated November 22, 2019; but, non-party Health Unit Manager Ball had informed Defendants that Plaintiff did not have a bottom bunk detail on November 16, 2023. (*See id.*, PageID.8.) As Plaintiff notes, the November 22, 2019, bottom bunk order did not have a "stop date" for the bottom bunk detail (*see* ECF No. 1-1, PageID.16); however, it was entirely reasonable for Defendants Davis, Smith, and King to rely on non-party Health Unit Manager Ball's "up to date" medical information, which indicated that Plaintiff did not in fact have a bottom bunk detail at that time, rather than Plaintiff's printed

14

copy, which had been "generated" on November 22, 2019 (*id.*). The fact that non-party Health Unit Manager Ball's information may have been incorrect does not show that Defendants Davis, Smith, and King knew that the misconduct was "false" when they issued it.

In summary, Plaintiff has not provided sufficient facts from which the Court could reasonably infer that Plaintiff was issued a misconduct ticket and that this charge was elevated to a class I misconduct charge because Plaintiff had verbally grieved the top bunk issue. Instead, the facts alleged in the complaint show that Defendants Davis, Smith, and King continued to order Plaintiff to move to a top bunk and then issued him a misconduct charge for refusing to do so *because of non-party Health Unit Manager Ball's statement* that Plaintiff was not entitled to a bottom bunk, *not because* Plaintiff had engaged in protected conduct.

Accordingly, for the reasons set forth above, Plaintiff's First Amendment retaliation claims against Defendants Davis, Smith, and King will be dismissed.

### b.      Defendant Kubont

To the extent that Plaintiff intended to bring a First Amendment retaliation claim against Defendant Kubont, Plaintiff fails to allege any facts to suggest that he had engaged in any protected conduct before Defendant Kubont allegedly discontinued the bottom bunk detail. Therefore, Plaintiff necessarily fails to allege any facts suggesting that Defendant Kubont discontinued Plaintiff's bottom bunk detail because Plaintiff had engaged in protected conduct. Therefore, any intended First Amendment retaliation claims against Defendant Kubont will be dismissed.

### D.      Fourteenth Amendment Due Process Claims

### 1.      Procedural Due Process Claims

Plaintiff claims that his procedural due process rights under the Fourteenth Amendment were violated when he was charged with "a false misconduct for disobeying a direct order on

November 16, 2023," which "was elevated to a class I [misconduct] for impeding facility operations." (Compl., ECF No. 1, PageID.10; *see id.*, PageID.11.)

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

Here, Plaintiff alleges that he was placed on non-bond status for eleven days pending his disciplinary hearing for the "false" elevated class I misconduct charge. (Compl., ECF No. 1, PageID.8.) As explained below, Plaintiff has not alleged a deprivation that inevitably affected the

duration of his sentence, nor has he alleged that he suffered an "atypical and significant" deprivation. *Sandin*, 515 U.S. at 484.

As to the first category—the existence of a deprivation that will inevitably affect the duration of a prisoner's sentence—Plaintiff's states that the original class II misconduct charge for disobeying a direct order was elevated to a class I misconduct for impeding facility operations. Plaintiff was found not guilty of the misconduct charge. (Compl., ECF No. 1, PageID.8; Misconduct Report, ECF No. 1-1, PageID.21.) However, even if Plaintiff had been found guilty, he could not allege that such class I misconduct conviction resulted in any loss of good-time credits, and therefore, he could not show that the protections of the Due Process Clause were triggered. The Sixth Circuit has examined Michigan statutory law as it relates to the creation and forfeiture of disciplinary credits[3] for prisoners, such as Plaintiff, convicted of crimes occurring after April 1, 1987. *See* MDOC Offender Tracking Information System, https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=874159 (last visited Oct. 4, 2024). Specifically, in *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the Sixth Circuit determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. *Id.* at 440. Building on this ruling, in *Nali v. Ekman*, the Sixth Circuit held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x 909, 912 (6th Cir. 2009); *accord Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

---

[3] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. Mich. Comp. Laws § 800.33(5).

As to the second category, Plaintiff has not alleged that he suffered an "atypical and significant" deprivation. *Sandin*, 515 U.S. at 484. In *Sandin*, the Supreme Court concluded that placement in segregation for thirty days did not impose an atypical and significant hardship. *Id.* Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that sixty-one days in segregation is not atypical and significant). Instead, generally only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (concluding that thirteen years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (finding that eight years of segregation implicates a liberty interest); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest). In his complaint, Plaintiff states that he was on non-bond status for eleven days. (Compl., ECF No. 1, PageID.8.) Because Plaintiff was not placed in segregation-like conditions for an extended period of time, Plaintiff's placement on non-bond status did not constitute an "atypical" and "significant deprivation."

Further, if confinement in segregation does not implicate a protected liberty interest, it follows that if Plaintiff lost any privileges while on non-bond status, any such loss of privileges did not implicate a liberty interest. *Cf. Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (finding that prisoners have no constitutional right to rehabilitation, education, or jobs); *Rezaq v. Nalley*, 677 F.3d 1001, 1013 (10th Cir. 2012) (discussing that "extreme conditions in administrative segregation do not, on their own, constitute an 'atypical and significant hardship' when compared to 'the ordinary incidents of prison life'" (citations omitted)).

Moreover, even if Plaintiff had alleged the loss of a protected liberty interest, he would not state a due process claim because he fails to show that he did not receive all the process that was due to him. *See Wolff v. McDonnell*, 418 U.S. 539 (1974) (setting forth the minimum process required for prison disciplinary proceedings that implicate a liberty interest). In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decisionmaker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. That is, the right to due process protects Plaintiff's ability to *respond* to spurious charges. It does not include the right to *prevent* or *prevail* on such charges. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990) ("[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." (emphasis in original) (citations omitted)). Here, Plaintiff was able to respond to the charges during the disciplinary hearing, and he was ultimately found not guilty.

Accordingly, for all of the foregoing reasons, Plaintiff fails to state a Fourteenth Amendment procedural due process claim.

### 2.    Substantive Due Process Claims

Plaintiff also alleges that his substantive due process rights were violated when he received a class II misconduct ticket for disobeying a direct order, which was elevated to a class I misconduct charge. (*See* Compl., ECF No. 1, PageID.10–11.)

"Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). Specifically, "[s]ubstantive due process 'prevents

the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

Plaintiff claims in a conclusory manner that the misconduct charges were "false" and that Defendants knew this; however, the *facts* alleged by Plaintiff do not support this conclusory assertion. (*See generally* Compl., ECF No. 1.) And, regardless, the facts alleged in the complaint fall short of suggesting the sort of egregious conduct that would support a substantive due process claim. *Cf. Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988) (holding that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power"), *overruled in other part by Thaddeus-X*, 175 F.3d at 388; *Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, *4 (W.D. Mich. Dec. 22, 2016).

Furthermore, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright*, 510 U.S. at 273–75 (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the First Amendment applies to protect Plaintiff's right to be free from retaliation and the Eighth Amendment applies to protect Plaintiff's right to have medically appropriate living conditions.

Accordingly, for the foregoing reasons, Plaintiff's Fourteenth Amendment substantive due process claims will be dismissed.

## **Conclusion**

Having conducted the review required by the PLRA, the Court determines that Defendants Davis, Smith, and King will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendant Kubont: (i) official capacity claims, (ii) First Amendment retaliation claims, and (iii) Fourteenth Amendment procedural and substantive due process claims. Plaintiff's Eighth Amendment claim against Defendant Kubont in her individual capacity remains in the case.

An order consistent with this opinion will be entered.


Dated:    October 4, 2024                              /s/ Robert J. Jonker
                                                       Robert J. Jonker
                                                       United States District Judge